is 19-3025 Strauss v. Angie's List. May I proceed, counsel? Good morning, and may it please the court. My name is Bob Berg, and I represent the Plaintiff Appellant, Steve Strauss, and he does business under the name of Classic Tree Care. This case is a case for false advertising brought under Section 43A of the LANDM Act. The plaintiff and the defendant are not competitors of each other, but the claims involve claims for false advertising. Classic Tree Care basically is a tree trimming, proving, and removal service primarily in the Kansas City metropolitan area. Angie's List, of course, is perhaps the leading Internet-based consumer rating service. In this case, the district court granted a 12B6 motion to dismiss on the basis that the plaintiff's claims did not constitute commercial advertising as Section 43A of the LANDM Act requires. We claim in this appeal that the district court erred in granting the motion to dismiss for two reasons. First of all, it ignored express allegations, which, when taken as true in the plaintiff's complaint, established that there was commercial advertising. Second, and perhaps even more importantly, the district court based its decision on an old, which needs to be updated, standard for commercial advertising that this court and all of the other circuits have employed, and that standard is no longer valid after the Supreme Court's 2014 decision in Lexmark. Now, in any case in which you have a statutory construction, the first place to begin is with the language of the statute itself. So let's begin there if we can. Section 43A of the LANDM Act provides, in relevant part, that there's liability against any individual or entity who, quote, in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographical origin of his or her or another person's goods, services, and commercial activities. So what is clearly required here is that the misrepresentations must be made in the context of what's known as, quote, commercial advertising. Now, for years, this court, starting in 2000 in the Procter & Gamble I case, has followed a test that originally came up in the Southern District of New York in 1994, the Gordon and Breach Test, and it had several factors to that. One of which was the second prong of a four-part test which required that the defendant and the plaintiff be competitors of each other. However, after that test and after Procter & Gamble, the Supreme Court decided the case of Lexmark, and that was in 2014. Lexmark did things entirely differently. The Supreme Court said, we no longer look at the relationship between the parties, between the plaintiff and the defendant. They need not be direct competitors of each other. Instead, the court's primary focus must be on the nature of the injury. So the question is, is the injury within what the Supreme Court said is the zone of interest? Now, to be sure, in almost all or most Lanham Act false advertising claims, the plaintiff and the defendant will be direct competitors. You will have, for example, a defendant who says something disparaging about the plaintiff's products or services, and that causes an injury to the plaintiff's business or reputation. That's the typical type of injury. As the Supreme Court said, that's the paradigmatic injury, where you have a direct loss of sales, which otherwise would have gone to the plaintiff. It now goes to the defendant. But in Lexmark, the Supreme Court was very clear, which held, that that is not the only type of injury that is cognizable under the Lanham Act. And on page 137... Let me stop you for just a second. Yes, sir. So the Supreme Court, they were analyzing a different element of our Procter & Gamble test than we're talking about here today. And they specifically said, with respect to, I think it's the third element of our Procter & Gamble test, that they had no opinion on that in the Lexmark case. Yes. So can we basically ignore circuit precedent, where the basis for doing so is a Supreme Court case that didn't overrule our circuit precedent, but instead specifically said, that with respect to that element, that they weren't touching it? Yeah. They didn't say that they were not touching the third element of the four-part test. But that's the language, though. If you go look at our test, the language shows that that's what they weren't talking about, isn't it? What they said, I believe, Your Honor, is that we are issuing no decision on whether this is commercial advertising or not. And this is very important. The test for commercial advertising itself has four elements. And it doesn't say in Lexmark, well, which of those four elements may or may not exist. It doesn't say that it has to be the defendant's goods or services. It could have been, for example, in the defendant in Lexmark with static controls. And were they consumers or not? Or were they just business entities? We don't know why the Supreme Court specifically said, we're passing on the issue of commercial advertising. I believe that the correct decision is, as Angie's List has cited in its brief, it should be what the Fourth Circuit has recently done in 2017 in Hansenbrook Farms. And in that case, the Fourth Circuit just specifically dropped in the third prong the name defendants between buy and goods and services. So that would completely comport with the Supreme Court's decision. If I had one point that I would want to emphasize above any other this morning to this court, it's as follows. We know now that in a Lanham Act case, the plaintiff and the defendant need not be competitors. We know that for a fact. So the second prong certainly does not exist anymore under the Gordon breach or Procter and Gamble test. Now, I can conjure up or imagine hundreds of examples where you have a Lanham Act case in which the plaintiff and the defendant are not direct competitors. Let's just say, just as an example, let's say you have a disgruntled blogger who's out there now that has some grudge or a vendetta against the plaintiff's business and starts posting on the internet very false and scurrious things about the plaintiff's business, which causes lost sales and reputation. Under Section 43 of the Lanham Act, that's cognizable. Under Lexmark, that is also cognizable because it's a damage to injury, to sales, or reputation. But the point I want... What misrepresentations damaged Classic Tree? We set those out in our brief, but basically they're saying when Classic Tree stopped paying advertising fees to Angie's List, then Angie's List engaged in a program that there simply stated that there were no reviews or ratings at all for Classic Tree. So when a consumer went on the website to look up tree surgeons, for example, in the Kansas City area, there would either be nothing now for Classic Tree, consumers could find anything, or worse yet, Angie's List said there are not enough ratings or services to even rate them on the website, when in fact there were plenty of positive ratings on them. That caused damage to their sales and it caused it to go other way. But the point I was trying to make, Your Honor, if I could, you could not possibly imagine a case where you have a defendant and a plaintiff that are not direct competitors, where you would now have the old third prong still in play. You would not have a case where consumers are now buying the defendant's services over the plaintiff's services. It just literally would be an impossibility. And Angie's business is to sell memberships to companies like Classic Tree. It does sell, I'm sorry, your question, Your Honor? Yeah, that's their business model, is to sell memberships. Well, their business... How do the misrepresentations... Their business model is to sell memberships to consumers or they can also offer a freemium service where consumers can go to look up ratings for businesses or organizations that do goods and services, yes. They're not engaged in the tree service business at all. But under Lexmark, that does not matter. If Angie's List is saying something under Section 43A, which causes lost sales to Classic Tree, that's cognizable and they do not have to be competitors at all. It doesn't have to be one step further than it is it promotes some other product, even though it may not be theirs. It says, again, if you go to that, it says it either has to promote their product, promote or mischaracterize. It can either be positive or negative. You could either promote your own product or you could mischaracterize someone else's product or service. That's what 43A says. And we're saying that's exactly what happened in this case. Angie's List misrepresented the quality of Classic Tree Care services by saying that there are not sufficient ratings to even give them a rating when in fact they had very many positive ratings. And in fact, if you would go on Angie's List and you would look up tree trimming companies, you would not see Classic Tree Care until much further. Well, at one point in time, they were completely blacklisted. You couldn't see them at all. And at another point in time, they were put down at the bottom of the list or near the bottom of the list before you'd have to scroll down pages and pages and pages before you'd even get to them. So the point that I want to emphasize is that if you had a situation where you had a plaintiff and a defendant that were not direct competitors, you literally could not, I can't imagine, I've tried to rack my brain to figure out a situation, where would you then be able to satisfy the third prong by saying consumers now were induced to buy the defendant's businesses or products? Let me understand. Your position is not that the misrepresentations promoted the products of other listing companies. You're not saying that. Well, it did. I mean, because it ranked them. As I understand your claim, your claim is that on the Lanham Act, it misrepresents your client. We are making, in highly summarized terms, we're making two types of claims. Number one, that Angie's list mischaracterized or criticized falsely classic tree care services. That's number one. But number two, it also mischaracterized or misrepresented Angie's list's own products and services. And that's another point that we haven't talked about yet. And that was that Angie's list told consumers that the way that it would go about reviewing service providers was based on actual reviews of individuals. They would rank them one to five or A through F or something like that. And that those reviews were not influenced by any outside factors and that no one could pay to be on Angie's list. I think the district court found that that allegation or misrepresentation was time-barred. Was, I'm sorry? Time-barred? Yeah, we're not appealing. They said some of it was time-barred, anything prior to 2015 on the website. But anything after that was still not time-barred. And so we're not appealing that part of the decision on the time-barred. We're saying that those representations still occurred after 2015 on its website and in its membership agreement. So you're saying that that promoted Angie's list's product? Yes. We do not believe that after Lexmark it remains necessary that there be a promotion of the defendant's products and services. You are not, okay, I understand your two claims. You are not claiming that the three statements that you rely upon promoted the products of somebody else. Well, it does that in the website. It does say that. That it promotes the products of others who list with Angie's. It does, because they're ranked higher and first. So you have three claims. Yes, then that would, I put in that umbrella of claims about three companies as one claim, and then I put in the other claim, what is it about Angie's list, its products and services as the second. And the third claim that it's misrepresentation generally. Yes, yes. I will, if you have any further questions, I will reserve my time. Thank you. I think your time expires. Thank you. It pleased the court. My name is Gordon Cooney, and along with my colleague, Mr. Corrado, we represent Angie's List. Members of the court, the issue that's properly before the court on this appeal is very narrow. Specifically, whether three statements about plaintiff's tree care service that were allegedly included on Angie's List service to consumers was commercial advertising or promotion for Angie's List under the Lanham Act. Before you delve on that, we were just talking about website neutrality as a misrepresentation. What's the status of that? Well, your honor, I think if we look at what's before the court, the district court opinion was very clear that the only conduct, the only statements, and the Lanham Act focuses on statements. The only statements that were not time barred were these three statements about classic tree service. The rest were, including the 2016 statements, were time barred under latches. On the reconsideration motion, it was quite clear plaintiff attempted to erase for the first time a continuing violation theory that tried to sweep in and say, well, the conduct extended into 2016 with respect to the statements about Angie's List, and the district court said no. That theory was not urged in response to the motion to dismiss, and in plaintiff's opening brief here, plaintiff could not have been clearer at pages 15 and 18 of their brief that they are not appealing the latches determination. And so the only statements that are properly before this court on the appeal are the three statements. One, the plaintiff Strauss had no rating or consumer reviews. Second, that Strauss had not met certain criteria to be listed. And third, that Strauss had no local offers to extend. Those are the only statements that are properly before the court because those are the only statements the court did not find as time barred. And in looking at those statements, remember the court, and if you look at 43A,  as commercial advertising or promotion for Angie's List, either under the act or under this court's opinion in the Procter & Gamble 1 case, I think it's important to look at 43A's text. 43A's text limits false advertising claims to statements in commercial advertising or promotion. Now, that prepositional phrase in commercial advertising and promotion is separate and additional to what the statements must be about. Mr. Berg talked about the fact that the statute says that it covers misrepresentations of the nature, characteristics, qualities, or geographic origin of his or another person's goods or services. But there is a separate requirement that those misrepresentations must occur under the language of the statute in commercial advertising or promotion. And that's the question that this court considered in the Procter & Gamble 1 case, where it adopted, that's the language of this court's opinion. Why isn't Angie's List's statements advertising for themselves? They're saying, you know, we do this rating for you and he doesn't qualify. Because, Your Honor, this court's test from Procter & Gamble said commercial advertising or promotion must be statements for the purpose of influencing consumers to buy the defendant's goods or services. And what the district court properly found was the three statements about the tree care service were not statements for the purpose of influencing consumers to become members of Angie's List. And so there's no free-floating claim under the Lanham Act for mischaracterization of somebody's product or service? Not unless it's in commercial advertising or promotion. There has to be the misrepresentation and it has to occur in commercial advertising or promotion in order to be actionable under the Lanham Act. And the Procter & Gamble case... Why aren't Angie's List's statements? Effectively, they're advertising what they do, they rate. And they say, he got a bad rating. The statements occurred in Angie's List service itself. The statements did not occur in advertising or promotion about Angie's List. So the context for the statements and the content of the statements disqualify those statements as for commercial advertising or promotion under this court's opinion in the P&G case. Because I think what's really significant, members of the court, what this court said was the key test for whether something is in commercial advertising or promotion is the question of, was the statement for the purpose of influencing consumers to buy the defendant's good or services? And the district court quite properly found that a statement about the characteristics of the tree care service were not made for the purpose of influencing consumers to join Angie's List. Would your answer be different if we concluded that the statement about the ratings neutrality or website neutrality had been preserved or not barred? Yes, Your Honor. I believe statements about Angie's List itself. That would induce consumers to buy memberships in Angie's List. Clearly, those statements and we have in the record the disclosure that was made as to why what we said was true. But statements about Angie's List's own characteristics are clearly statements made for the purpose of influencing members to join. But those statements are not before the court because they've been found to have been time barred. And the plaintiff was expressed in their brief that the plaintiff is not appealing them. I'd like to spend a minute talking about Lexmark because Lexmark did not abrogate the third prong of the Gordon and Breach test. Lexmark dealt with an entirely separate question. And that question was, what types of plaintiffs have standing to bring a Lanham Act claim? And the court rejected the notion that it was a categorical requirement that a plaintiff be a competitor in order to have standing. But the question of what kind of plaintiff has standing to bring a claim is entirely separate from the question here, which focuses on what kinds of statements are actionable under the Lanham Act. And indeed, Justice Scalia in footnote one made plain, as Judge Carson noted, that the Lexmark case expressly declined to consider that question, the question of whether the statements there were in commercial advertising or promotion. Now, interestingly- Just a minute. What about assuming that this claim was made and it was not barred by latches or statute of limitations? And that is that Angie's list says, by the products of the people who are listed in the top three and the plaintiff doesn't appear in the top three,  Is that a claim in the Lanham Act? Well, I think, Your Honor, that would likely be viewed as an expression of opinion by the products of the top three. But I think- Advertising for the products of the other three companies? Your Honor, I think probably the simpler answer is if the statement was a promotion of the products  that would not qualify under this court's test in Procter & Gamble because the statement would not be for the purpose of influencing consumers to buy Angie's List product. Exactly my point. That would not qualify in the Lanham Act. Isn't the Lanham Act broad enough that it would cover the circumstances in the hypothetical I gave you? I don't believe so, Your Honor, because of the language in commercial advertising or promotion. What you posit may be sufficient to identify a misrepresentation about another's goods or service, but the question is whether it appears in commercial advertising and promotion. And what this court has said and what the other courts in the rest of the country have said- Okay, then let's change the hypothetical that Angie's List says buy these three tree companies and the plaintiff's not in those three tree companies. And then they do an ad for them. Would that qualify under the Lanham Act? I'm just setting aside Procter & Gamble. I think what's at the heart of in commercial advertising or promotion, which is what's behind Procter & Gamble, is there may be a number of different ways of doing it, but at its heart, it's about commercial advertising or promotion that's designed to promote at some level the defendant's business. And what this court has said is the way to determine that is to look to see whether the purpose of the advertising was to influence consumers to buy the defendant's goods or service. So I think the right way to think about all of this is Lexmark focused on who has standing to bring a claim. The statute also allows misstatements of a variety of different sorts to be actionable. But a plaintiff who has standing and the statement has to be in commercial advertising or promotion, and that at its heart is about communications that are broadly disseminated for the purpose of selling the defendant's product or service. So you would exclude from Lanham Act coverage listing agencies. I'm sorry. You would exclude listing agencies from Lanham Act coverage. If they were advertising for themselves, if they were, if the content of the ad was something that was to promote itself, they would be covered by the Lanham Act. Excluding ad agencies from coverage under the Lanham Act. So whether an ad agency could be held secondarily liable for the misrepresentations of their client is a separate question. But the ad agency, unless it was advertising for itself, Your Honor, that's correct. Because of the requirement of in commercial advertising and promotion. Part of what was going on here in some circumstances were that consumers were offered a coupon or voucher, whatever you want to call it, to get a discount from the tree company. And then Angie's List would get a percentage or cut of that discount. Why wouldn't that be Angie's List selling its own good or service? Your Honor, I think a couple of reasons behind that. First of all, it's unclear from the complaint what the purpose is behind the allegations in paragraph 52. The issues about relationships between Angie's List and others all dealt with the time barred period. But again, I think the core question when it comes to false advertising under 43A is the question of whether the purpose of the communication was to influence consumers to purchase the goods or services of the defendant. And there is no contention here that these statements, these three statements about a tree care company had as its purpose to broaden Angie's List's membership. And if you look at the plaintiff's reply brief, the last page of the plaintiff's reply brief, even the plaintiffs are focused on what is the impact of these three sentences, these three statements, on the willingness of consumers to do business with Angie's List. And so this court's opinion in Gordon and Breach remains good law. Lexmark did not affect it. The Fourth Circuit by no means abrogated the third standard from Gordon and Breach. Although it paraphrased the language, it noted very clearly that it was continuing to follow the Gordon and Breach test with the exception of the second criterion. This court would be standing alone in concluding that Lexmark did anything to disturb the very well-settled precedent that is the established test for what is in commercial advertising and promotion under the line of Mac. Let me ask you to assume we're talking about Craig's List and not Angie's List and that I put an ad up that said, you know, use my service because it's far better than Judge Timkovich's service because he doesn't show up on time every time like I do. Where does Craig's List come out on that for allowing me to put that up? That's an interesting question, Your Honor. Obviously different from here because there is no claim here that there was anybody's statement at issue in this case other than Angie's List. I think the question there would be whether Craig's List has somehow adopted that, whether there were disclosures made to make plain that the statements of others are not the statements of Craig's List and there would be the possibility, perhaps, if there were an agency or something else established for vicarious liability. And so I think we would have to look very carefully at the content of what was said, how Craig's List works, and what was disclosed to consumers. Okay, thanks. Mr. Cooney, your time's expired. I think the case is ready for submission and Counselor, excuse, thank you for the arguments.